**SO ORDERED.**

**SIGNED March 21, 2014.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATE BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA

IN RE:

GULF FLEET HOLDINGS, INC., ET AL,                CASE NO. 10-50713

    Debtors                                          Chapter 11

------------------------------------------------------------------
ALAN GOODMAN, TRUSTEE OF THE
GULF FLEET LIQUIDATING TRUST,

    Plaintiff

VERSUS                                           ADVERSARY NO. 12-05046

REAMA, INC., d/b/a G & M WELDING
AND FABRICATING,

    Defendant
------------------------------------------------------------------
                              REASONS FOR DECISION
------------------------------------------------------------------

    The present matter before the court is an adversary proceeding brought by Alan Goodman, Trustee of the Gulf Fleet Liquidating Trust (the "Trustee") against Reama, Inc., d/b/a G & M Welding and

Fabricating.  The Trustee asserts preference claims under 11 U.S.C. § 547(b) and seeks avoidance of payments made by Gulf Fleet to Reama totaling $85,121.86 during the ninety-day preference period. The court took the case under advisement following a trial on the merits.  After considering the record, the parties' briefs, and the relevant authorities, the court rules as follows.

**JURISDICTION**

This case has been referred to this court by the Standing Order of Reference entered in this district which is set forth as Rule 83.4.1 of the Local Rules of the United States District Court for the Western District of Louisiana.  No party in interest has requested a withdrawal of the reference.  The court finds that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Moreover, the court may enter final orders on the claims and defenses asserted in this case under Stern v. Marshall, ___U.S. ___, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). See First Choice Drywall, Inc. v. Presbitero (In re First Choice Drywall, Inc.), 2012 WL 4471570 (Bankr. N.D. Ill. Sept. 25, 2012)(bankruptcy court has the power to determine preference actions after Stern ); Olsen v. PG Design/Build, Inc. (In re Smeltzer Plumbing Sys., Inc.), 2011 WL 6176213 (Bankr. N.D. Ill. Dec. 12, 2011)(same); Nanodynamics, Inc. v. Rothstein (In re Nanodynamics, Inc.), 474 B.R. 422, 429 (Bankr. W.D.N.Y. 2012) (same); Appalachian Fuels, LLC v. Energy Coal

-2-

Resources, Inc. (In re Appalachian Fuels, LLC), 472 B.R. 731, 744 (E.D. Ky. 2012) (same); In re Am. Hous. Found., 469 B.R. 257, 265 (Bankr. N.D. Tex. 2012) (same); In re DBSI, Inc., 467 B.R. 767, 773 (Bankr. D. Del. 2012) (same); West v. Freedom Medical, Inc. (In re Apex Long Term Acute Care-Katy, LP.), 465 B.R. 452, 463 (Bankr. S.D. Tex. 2011) (same); Burtch v. Huston (In re USDigital, Inc.), 461 B.R. 276, 285 (Bankr. D. Del. 2011) (same).

## BACKGROUND

Gulf Fleet owned and operated a fleet of offshore and fast supply vessels that supported oil and gas exploration and production companies and other oilfield services companies. Gulf Fleet also operated an independent vessel brokerage business. Reama provides welding and repair services to sea vessels. Reama provided welding and repair services to Gulf Fleet from 2008 through 2010.

Gulf Fleet filed for relief under Chapter 11 of the Bankruptcy Code on May 14, 2010. The Trustee brought the present case against Reama under 11 U.S.C. § 547(b) and challenges five payments during the preference period totaling $85,121.86. The parties have stipulated to the *prima facie* elements of a preference claim under section 547(b) except for the question of whether the challenged transfers were made "to or for the benefit of" Reama. Reama also raises the "ordinary course of business" and "new value" defenses to avoidance under 11 U.S.C. § 547(c)(2) and 547(c)(4).

-3-

## DISCUSSION

**A. The Trustee's Preference Claim.**

The Trustee has the burden of persuasion at trial with respect to each of the elements of a preference claim under section 547(b). Section 547(b) provides that a trustee may avoid any transfer of an interest of the debtor in property:

    (1)  to or for the benefit of a creditor;

    (2)  for or an account of an antecedent debt owed by the debtor before such transfer was made;

    (3)  made while the debtor was insolvent;

    (4)  made–

        (A)  on or within 90 days before the date of the filing of the petition; or

        (B)  between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

    (5)  that enables such creditor to receive more than such creditor would receive if–

        (A)  the case were a case under chapter 7 of this title;

        (B)  the transfer had not been made; and

        (C)  such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). Reama seizes on the language in section 547(b)(1) that defines a preferential transfer as a transfer of an

interest of the debtor in property "to or for the benefit of a creditor" and argues that the Trustee must prove the extent to which a transfer benefitted the creditor as part of the Trustee's *prima facie* case.

The text of section 547(b)(1) does not support Reama's position. The language of section 547(b)(1) is disjunctive and covers situations in which a transfer is made directly to a creditor as well as indirect transfers to a third party for the benefit of a creditor. For example, a debtor's payment to a creditor on account of an antecedent debt is a direct transfer to that creditor. If the debt is guaranteed, however, it is also a transfer that benefits the guarantor to the extent that the transfer reduces the guarantor's liability. As a result, the guarantor may be subject to an avoidance claim under section 547(b) even though the guarantor did not receive any of the funds paid to the creditor. See, e.g., <u>Goldberger v. Davis Jay Corrugated Box Corp. (In re Mercon Indus., Inc.)</u>, 37 B.R. 549, 552 (Bankr. E.D. Pa. 1984). Thus, proof that a creditor benefitted from a transfer is a required element of a trustee's case with respect to an ***indirect transfer***.

Here, however, the record establishes that the transfer was made ***directly to Reama***. Given the disjunctive language of section 547(b)(1), the Trustee need not prove the extent to which the

-5-

transfer actually benefitted Reama as would be the case with an indirect transfer. Accordingly, the court finds that the Trustee has established each of the elements of a preferential transfer claim under section 547(b) with respect to the five payments totaling $85,121.86 made during the preference period.

**B.  The Ordinary Course Defense.**

Section 547(c)(2) provides that an otherwise avoidable transfer is not subject to avoidance:

> to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--
>
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>
> (B) made according to ordinary business terms....

11 U.S.C. § 547(c)(2). The ordinary course exception is an affirmative defense, so Reama has the burden of persuasion as to each element of the defense. In re Gulf City Seafoods, 296 F.3d 363, 368 n.5 (5th Cir. 2002). Based on the trial record, there is no genuine dispute that the debts reflected by the challenged invoices were *incurred* in the ordinary course. Rather, the dispute centers on whether the transfers were made in the ordinary course of both parties (which is a subjective inquiry) or whether the

-6-

transfers were made according to ordinary business terms as reflected in the relevant industry (which is an objective inquiry). In re SGM Acquisition Co. LLC, 439 F3d 233, 239 (5th Cir. 2006).

The subjective prong of the ordinary course defense requires a fact-specific examination of the parties' conduct to determine "whether the transactions between the debtor and the creditor before and during the ninety-day period are consistent." Lightfoot v. Amelia Maritime Services, Inc., (In re Seabridge Marine, Inc.), 412 B.R. 868, 872 (Bankr. E.D. La. 2008). The factors that courts consider include (1) the time period over which the parties engaged in similar transactions, (2) whether the amount or form of payment differ from past practices, (3) the presence of any unusual collection activity, and (4) whether the creditor took actions that gained it an advantage over other creditors in light of the debtor's deteriorating financial condition. See Kleven v. Household Bank F.S.B., 334 F. 3d 638, 642 (7th Cir. 2003); In re Quad Systems Corp., 2003 WL 25947345 at *5 (Bankr. E.D. Pa. 2003). A creditor typically addresses these factors by establishing a "baseline of dealing" as far as the parties' past billing, payment, and collection practices. In re Accessair, Inc., 314 B.R. 386, 393 (8th Cir. BAP 2004) (creditor had "the burden of establishing some baseline of dealings between the parties prior to the preference period"). A creditor must establish that the challenged

preference-period transfer falls within the normal pattern of payment practices between the parties during the pre-preference period. Id. Section 547(c)(2) provides that an otherwise avoidable transfer is not subject to avoidance:

> to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--
>
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>
> (B) made according to ordinary business terms ....

11 U.S.C. § 547(c)(2).

Reama contends that the payments made during the 90-day preference period are consistent with the payment history between the parties prior to the preference period. Reama also contends that there is no evidence of any unusual collection efforts with respect to the preference-period payments. George Sims, a principal of Reama, also testified that the pattern of payments during the preference period was similar to his prior business dealings with Gulf Fleet and were not unusual.

The court concludes that Reama cannot rely on the ordinary course of business defense under section 547(c)(2) for all of the preference-period transfers. Gulf Fleet made approximately nine

-8-

payments to Reama covering approximately 13 invoices during the pre-preference time period. The delay between the date of each invoice and the payment of each invoice ranged from 250 days to as low as 18 days. The average delay between invoice and payment during this period was approximately 103 days. During the preference period, the delay between the date of the invoice and the date of payment ranged from 85 days to 46 days, with an average delay of approximately 62 days. The average delay for the preference period was thus made materially shorter than the average delay during the pre-preference period. Although the preference-period payments all fall within the pre-preference delay range of 18 to 250 days, this range is too broad to serve as a baseline for judging the payments made during the preference period. Using such a broad baseline "captures outlying payments that skew the analysis of what is ordinary." In re Quebecor World (USA), Inc., 491 B.R. 379, 387-88 (Bankr. S.D.N.Y. 2013). On the other hand, the record reflects 3 payments on 5 invoices during the pre-preference period totaling $44,270.24 with payment delays ranging from 69 to 75 days and an average delay of 72 days. These payments occurred from June 2009 through the beginning of the preference period and amount to almost 50% of the pre-preference period payments to Reama. The court concludes that these payments can serve as an adequate "baseline of dealing" given the timing and total volume of the

payments as well as Mr. Sim's testimony that Reama did not undertake any unusual collection activities with respect to the preference period payments.

Accordingly, the preference-period payments that were made with a delay of less than 69 days were not made in the ordinary course of business in light of the parties' pre-preference period payment history, which on average was characterized by longer payment delays than the preference-period payments. The following invoices totaling $65,235.11 have a delay of less than 69 days and are not subject to the defense: 3234, 3235, 3237, 3238, 3239, 3241-3243, 3210, 3226, 3232, 3233, 3240, 3253, and 3302. (Jt. Tr. Exh. # 1). On the other hand, the following invoices totaling $19,886.75 are subject to the defense because they have a delay period that exceeds 69 days and they do not materially depart from the 72 day average delay period of the baseline payments: 3259, 3260, 3255, 3258, 3266, 3268, 3269, and 3286.

**C. The New Value Defense.**

Section 547(c)(4) provides an exception for transfers "to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor – (A) not secured by an otherwise unavoidable security interest; and (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of

-10-

such creditor." "New value" is defined as "money or money's worth and goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under applicable law...." 11 U.S.C. § 547(a)(4). In other words, a creditor must establish that it provided the debtor with "something new that is of tangible value." <u>In re Martin Wright Electric Co</u>., 2008 WL 114926 at *9 (Bankr. W.D. Tex. Jan. 9, 2008) (citing <u>In re Fuel Oil Supply & Terminaling, Inc</u>., 837 F. 2d 224, 230 (5th Cir. 1988)).

Reama urges a new value defense with respect to invoice numbers 3303, 3306, 3318, 3328, 3342, 3346, 3356, and 3373. According to Reama, these unpaid invoices reflect materials and services that constitute "new value" within the meaning of section 547(c)(4). However, any new value reflected in invoice numbers 3303, 3306, 3328, and 3342 was provided prior to the date of the first challenged preferential transfer and cannot, therefore, support a new value defense. With respect to invoice numbers 3346, 3356, and 3373, there is no evidence in the record establishing when the materials and services reflected in those invoices was provided. Finally, the record does support a new value defense with respect to invoice number 3318 for $1,062.50 based on the face of the invoice and the testimony of Mr. Sims.

-11-

## CONCLUSION

For the foregoing reasons, the court finds in favor of the Trustee on his preference claim under 11 U.S.C. § 547(b). The court rules in favor of Reama on its ordinary course defense under 11 U.S.C. § 547(c)(2) with respect to $19,886.75 of the preference-period payments. Reama is also entitled to a new value defense with respect to an additional $1,062.50 of preference-period payments. In sum, the Trustee is entitled to judgment in the amount of **$64,172.61** as well as pre-judgment and post-judgment interest. In all other respects, relief is denied. The Trustee shall submit a judgment reflecting the court's ruling within twenty (20) days.

###